TANIA L. WHITELEATHER
Law Offices of Tania L. Whiteleather, Inc.
5445 E. Del Amo Blvd. Ste 207
Lakewood, CA 90712
tel (562) 866-8755  fax (562) 866-6875
tlwhiteleather@gmail.com

ROBIN E. MILLER    SBN 142613
Law Office of Robin Miller
1791 Solano Ave. #E-3
Berkeley, CA 94707
510-859-3290
robin@robinmillerlaw.com

Attorneys for Plaintiff


DAVID R. MISHOOK, SBN 273555
FAGEN FRIEDMAN AND FULFROST, LLP
70 Washington Street, Ste 205
Oakland, CA 94607
Tel 510 550-8200
dmishook@f3law.com

Attorney for Alameda Unified School District

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.G., a minor, by and through her Guardian Ad Litem, AMELIA LANDESMAN,<br><br>           Plaintiff,<br><br>     vs.<br><br>ALAMEDA UNIFIED SCHOOL DISTRICT, a Local Educational Agency,<br><br>           Defendant. | CASE NO. 3:21-cv-01529-EMC<br><br>**JOINT DISCOVERY LETTER BRIEF**<br>to<br>The Hon. Laurel Beeler<br><br><br>The Hon. Edward M. Chen<br>Hearing Date: Nov. 22, 2022 |

**P.G. V. ALAMEDA UNIFIED SCHOOL DISTRICT Case No. 3:21-cv-015290-EMC**
**LETTER BRIEF ON DISCOVERY DISPUTE**

Pursuant to Sec. 4 of Standing Order for Honorable U.S. District Court Magistrate Judge Laurel Beeler, Plaintiff P.G. and Defendant Alameda Unified School District hereby submit this Joint Letter Brief outlining the current discovery dispute between the parties.

On April 14, 2022 Honorable Judge Edward M. Chen referred this discovery dispute to Magistrate Judge Beeler. Judge Chen also ordered the parties to Meet and Confer for a second time on the dispute regarding allowable discovery under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. and submit a Joint Discovery Letter. The undersigned, lead counsel in this case met and conferred via Zoom as lead counsel for P.G. is located outside the Bay Area.

**BACKGROUND OF DISCOVERY DISPUTE**

At the Parties initial case management conference with Judge Chen, the Parties and the Court discussed the general availability of traditional civil discovery in appeals of state administrative decisions under the IDEA. Plaintiff takes the position that there was no discovery available in the underlying hearing and that the requested discovery is relevant and necessary in this appeal.

Defendant takes the position that, as a general matter, discovery is not available in IDEA appeals without leave of the Court and a showing of good cause. *See, SM v. Cupertino Union Sch. Dist.*, No. C 05-04618 JF, 2006 WL 1530025, at *4 (N.D. Cal. June 2, 2006) (*citing*, *Brandon H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 17*, 82 F. Supp. 2d 1174, 1179 (E.D. Wash. 2000)) (requiring "threshold burden" of showing that additional discovery is "necessary"). *See, also, e.g., D.A. ex rel. Adams v. Fairfield-Suisun Unified Sch. Dist.*, No. 2:11-CV-01174-GEB, 2012 WL 3885468, at *1 (E.D. Cal. Sept. 6, 2012)

**AREAS OF DISAGREEMENT**

The parties disagree on three areas of proposed discovery as follows:

**1.** *District settlement or other agreements with state-licensed clinical psychologists from December 14, 2017 through the present.*

Plaintiff believes that the policy for independent educational evaluations (IEEs) utilized by Defendant District interferes with Parent's right to obtain an independent educational evaluation under 34 C.F.R. 300.502 by unreasonably limiting whom District will pay to conduct psycho-educational IEEs to school psychologists and rejecting state-licensed clinical psychologists. In fact, District has often contracted with licensed clinical psychologists, including Dr. Grandison, to conduct IEEs, even after December 2017 when it adopted the policy under dispute. Under California law "licensed psychologists," the only professionals permitted to refer to themselves as "psychologists" without qualifying language, are required to undergo intensive training and may then practice in all areas of psychological evaluation, treatment and research pertaining to education and behavior; while the activities of school psychologists and "licensed educational psychologists" ("LEP") are more narrowly restricted. (California Bus, & Prof. C. §§ 2902, 2903

(a), 2910, 4989.10 *et. seq.*) Among other limitations, school psychologists must work for public schools while licensed educational psychologists must have school psychologist experience. Licensed clinical psychologists, on the other hand, are completely independent of school districts. Some parents choose to have a clinical psychologist conduct their IEEs precisely because of their extensive training and independence from schools.

Plaintiff argues that the agreements sought in discovery will clarify District's policies and practices with recent prior IEEs, which are contrary to the District's actions in this case and which actions OAH (the Office of Administrative Hearings) incorrectly approved. Those agreements are relevant to not only District's interpretation but also to actual practices regarding the SELPA (Special Education Local Plan Area) policy; and for that reason, Parents sought District IEE contracts with clinical psychologists through subpoenas duces tecum for the administrative hearing. OAH declined to enforce the subpoenas. Plaintiff has broadened her request to include settlement agreements, specifically as a result of hearing testimony by a district administrator that the District repeatedly funded clinical psychologist IEEs in settlement agreements with parents. Plaintiff has yet to receive those agreements from Defendant District, even through her California Public Records Act request.

Defendant asserts that these settlements or agreements are irrelevant to the statutory interpretation at the center of this case. The criteria for an IEE—including assessor qualifications—must be the same as the criteria the school uses when it initiates an assessment to the extent those criteria are consistent with a parent's right to an IEE. (Doc. 1-1 at 9-10 (*citing* 34 C.F.R. § 300.502(e)(1).) "A district's criteria may not be so narrow as to interfere with a parent's right to obtain an [IEE]." (Doc. 1-1 at 16 (*quoting Letter to Petska*, 35 IDELR 191 (OSEP 2001).) Here, the policy applied by the District required an assessor to be a school psychologist or LEP. The policy allowed the District to depart from the qualification criteria if the student demonstrated unique circumstances to do so. (Doc. 1-1 at 17.) In the underlying case, student was unable to demonstrate any unique circumstance. (*Id.*) These documents are therefore irrelevant as they do not speak to the application of the policy in those particular circumstances. Further, for these documents to have any value, the Court would need to understand the context of each document, including specifics about the child to be assessed and those underlying disputes. Finally, agreements are entered into without any admission of liability and likely settle a dispute about the *application* of the policy, making the settlement agreement itself irrelevant.

With regard to the subpoena duces tecum, Student simplifies and somewhat misrepresents the record. On the first day of hearing, OAH heard and granted a motion to quash two subpoenas duces tecum issued by Student without prejudice to Student reraising the subpoena requests later in hearing. The motion was granted on five grounds. First, the subpoenas included a return date prior to first day of hearing even though the IDEA and California administrative procedures in due process hearings do not allow for prehearing discovery. Second, the subpoenas provided only two days for response and therefore were untimely. Third, the subpoenas were improperly served by email without an agreement for electronic services. Fourth, OAH found that the subpoenas lacked an appropriate statement of "reasonable necessity." Finally, OAH held generally that the fact that the District may have worked around its SELPA policy in other situations had no relevant relation to whether the policy was appropriate in this case.

Finally, the District must also note that it responded to two California Public Record Act requests by both Plaintiff and her attorneys which requested evidence of settlement agreements and contracts in which the District agreed to pay or paid for assessments by clinical psychologists. The District provided those records and, so, believes this subpoena to be duplicative.

**2.**   *Supplementary evidence from Dr. Ann Simun a school psychologist who is also a state licensed clinical psychologist, a) regarding statements made at hearing by District witnesses that a clinical psychologist lacks training and experience to conduct psycho-educational evaluations, and b) explaining training required of school psychologists, and c) explaining what psychology activities school psychologists may and may not undertake.*

Plaintiff argues that District did not meet its burden of proof in the underlying OAH case, and that OAH was therefore mistaken in its decision. Not one witness at hearing explained school psychologists' required training or the limitations on their assessments. No school psychologist was called by District at the due process hearing. Plaintiffs were taken by surprise with District's unproven argument that state-licensed clinical psychologists lack the training needed to conduct IEEs, which appears nowhere in the complaint. Plaintiff believes Dr. Simun is perfectly situated to address this issue as she has expertise based on firsthand training and experience as both a licensed clinical psychologist and a school psychologist. Her testimony will address District's at-hearing claims and will explain the training and experience of clinical psychologists versus school psychologists.

The District believes this testimony would be cumulative and irrelevant. First, the District's position at hearing was not that "only school psychologists are qualified to conduct IEEs." The District's legal argument, as reflected in the Decision, is that the policy applied complies with the IDEA and does not unduly limit a parent's right to an IEE. In addition to that core argument, the District also argued that a policy that an IEE assessor must *at minimum* possess a school psychologist credential or be a LEP was both reasonable and logical as school psychologists and LEPs are specifically trained to conduct psychological assessments for the purposes of the IDEA and student needs in the school environment.

The District further disputes that Plaintiff was "surprised" by its staffs' testimony at hearing. Plaintiff called three clinical psychologists during the course of the hearing—Dr. Carina Grandison, Dr. Sara Schiff, and Dr. Cynthia Peterson—and elicited testimony "about their experience and training as licensed clinical psychologists who specialized as neuropsychologists." (Doc. 1-1 at 13.) "The bulk of their training on special education assessments and programming came from their extensive field experience." (*Id.*) However, OAH observed that whether a licensed clinical psychologist has more or different training that a school psychologist or LEP "does not demonstrate that they are better suited for conducting educational evaluations." (Doc. 1-1 at 14.) Further, it was not even necessary for OAH's decision as the law does not require the most well trained, most highly educated, or most experienced psychologists, to conduct IEEs. (*Id.*)

At hearing, OAH heard the testimony of three licensed and experienced clinical psychologists about their training and experience and rejected Plaintiff's argument that the District limited Plaintiff's choice of assessors by applying the SELPA criteria. Plaintiff has not stated what Dr. Simun would add that would be different from the testimony of these three clinical

psychologists (including Plaintiff's choice assessor, Dr. Grandison), or why it is legally relevant to add another opinion that a clinical psychologist could conduct a school-based assessment.

**3.** *SELPA policies that have changed to adapt to the novel position taken by OAH in the decision in this case.*

Since the release of the underlying OAH decision in this case a sizeable number of SELPAs (Special Education Local Plan Areas, regional groups of school districts that assume budgeting, planning and policy duties) have changed their IEE policies to bar students seeking IEEs at public expense from having psychoeducational IEEs conducted by state-licensed clinical psychologists. Many districts continue to fund well-qualified clinical psychologists to conduct IEEs. These disparate policies create inequities for students who cannot obtain IEEs by state-licensed clinical psychologists. The policy changes by districts since the underlying OAH decision results in an inequitable application of 300.502 and related laws for California students in different – and neighboring - school districts.

Defendant disagrees with this request because changes to other SELPA policies in reliance on the OAH decision in this case is factually and legally irrelevant to this action and, further, are wholly beyond this scope of this lawsuit. Plaintiff's arguments that the policies of other SELPA "pose[] inequities to students in neighboring districts," is not before this Court and appears to only be intended to prejudice this Court's opinion.

**4.**   *Judicial Notice of administrative reports and decisions*

On a fourth issue initially in dispute, Plaintiff agrees with Defendant's point that some of the California Dept. of Education (CDE) investigation reports and Office of Administrative Hearings (OAH) decisions may be judicially noticed, eliminating the need for discovery in those areas. However, because CDE does not typically include the name or license of parent's requested clinical psychologist for an IEE in its' investigation report, Plaintiff will seek to add a declaration from the parent or advocate involved as to the name of the specific requested IEE evaluator.

The District does not view a request for judicial notice as discovery. The District does, however, reserve its right to object to any request to supplement the administrative record with CDE investigative reports and OAH decision, as well as declarations from parties to those decisions, as irrelevant.

**LEGAL ARGUMENTS**

Plaintiff argues that pursuant to *Ojai Unif. Sch. Dist. v. Jackson,* 4 F.3d 1467, 1473 (9th Cir. 1993)*,* "additional" evidence may be allowed to supplement the administrative record when 1) there are gaps in the administrative transcript, 2) a witness has been unavailable, 3) evidence has been improperly excluded by the agency, or 4) evidence concerning relevant events is obtained after the hearing. What constitutes "additional" evidence is left to the discretion of the trial court. (*Supra*, 1473). In determining what constitutes additional evidence, a court should weigh the concerns of not allowing a party to undercut the statutory role of the ALJ, a party reserving the

best evidence for trial, the reason a witness did not testify at the administrative hearing, and the conservation of judicial resources.

In this case there are gaps in the administrative record. There is not enough information about the training required to become a school psychologist and the limitations on activities school psychologists may undertake. *(See Plaintiff's position in Issue 2 above.)* Additionally, the administrative record does not contain sufficient information on the District's practices of contracting with state-licensed clinical psychologists to conduct IEEs after adoption of the current IEE policy. *(Plaintiff's position in Issue 1 above)*. Regarding the latter, Plaintiff also believes that OAH improperly excluded subpoenas deuces tecum seeking District's IEE contracts since 2017, when the current IEE policy was adopted. *(Id.)* As to the fourth rationale for allowing additional evidence under *Ojai*: evidence concerning changes in SELPA IEE policy followed by other school districts in California occurred after the decision was rendered in the underlying OAH case, and in response to it. *(See Plaintiff's position in Issue 3 above.)* All evidence sought here by Plaintiffs is new, relevant and admissible.

Defendant believes that all the requested discovery is not relevant and, thus, is unlikely to meet the standard of additional evidence for IDEA appeals. *Ojai Unif. Sch. Dist.*, 4 F.3d at 1473. "[A] district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes 'the character of the hearing from one of review to a trial de novo.' " *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings*, 652 F.3d 999, 1004 (9th Cir. 2011) (*citing*, *Ojai*, 4 F.3d at 1473.) Evidence must be "non-cumulative, relevant, and otherwise admissible" to be considered by a court. *Id.* The proposed discovery here is not intended to provide this Court with such evidence.

The District disputes that any material gap in the administrative record exists in this case. The OAH decision is thorough and well-reasoned, and does not rely on any evidence to which specific rebuttal is now necessary. Specifically to the areas of proposed discovery, OAH held that the District's policy of requiring assessors to, at minimum, be credentialed school psychologists or LEPs was consistent with 34 C.F.R. § 300.502(e)(1) which requires the qualification of examiners to be the same "that a school district uses when it initiates an assessment." (Doc. 1-1 at 9-13.) The training of school psychologists and LEPs in contrast to clinical psychologists was relevant only insofar as it supported the logical reasonableness of the criteria and did not deny parents access to qualified assessors. (Doc. 1-1 at 14-7.) In fact, the OAH decision explicitly does not come to any conclusion about "[w]hether a neuropsychologist or licensed clinical psychologist has more or different training than a school psychologist or licensed educational psychologist[.]" (Doc. 1-1 at 14.) While, "From a purely logical view, it stands to reason that psychologists with specific training and experience assessing and developing programs for children with special needs[] are better suited to conduct psychological evaluations," the determination of whether that is factually the case was "neither required nor made" in the underlying case. (*Id.*)

/ /

/ /

/ /

DATE:  4.27.2022 By: /s/ Tania L. Whiteleather
Tania L. Whiteleather
Attorney for Plaintiff

DATE: 4.27.2022 By: /s/ David R. Mishook
David R. Mishook
Attorney for Defendant